UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-mj-02179-Otazo-Reyes

UNITED STATES OF AMERICA

v.

Ernesto Morales Bacallao

Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ___ Yes ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___ Yes ✓ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  ___ Yes ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: *Will J. Rosenzweig*
Will J. Rosenzweig
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5502698
11200 NW 20th Street, Suite 101
Miami, FL 33172
Tel:   (305) 961-9403
Fax:   (305) 530-7976
Email: Will.Rosenzweig@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Ernesto Morales Bacallao | ) | Case No. 1:21-mj-02179-Otazo-Reyes |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **January 28, 2021** in the county of **Miami-Dade** in the **Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

Daniel Borja, Postal Inspector, USPIS
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by **Facetime**

Date: 1/29/21

_____
Judge's signature

City and state: Miami, Florida

Honorable Alicia M. Otazo-Reyes, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Borja, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1. I am employed as a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been so employed since June of 2012. I am currently assigned to the Miami Division of the USPIS, specifically to the Homeland Security Team. I am assigned to investigate the unlawful transportation of contraband, including controlled substances, through the U.S. Mail. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7). I am an officer of the United States empowered by law to conduct investigations and to make arrests for crimes furthered through the use of the U.S. Mail, for crimes connected to the U.S. Postal Service ("USPS") and property of the USPS, and for other postal offenses, as set forth in 18 U.S.C. § 3061, as well as violations of Title 21 of the United States Code, Controlled Substances Act. In addition to conducting multiple Title 21 controlled substances investigations involving the use of the U.S. Mail, I have also participated in numerous interdiction operations targeting parcels containing all types of contraband, both in my duty stations and elsewhere in the continental United States. As a result, I am familiar with known drug trafficking source and destination areas, various smuggling methods and techniques used by drug traffickers, and the methods of packaging illicit contraband.

2. This affidavit is submitted in support of a criminal complaint charging ERNESTO MORALES BACALLAO, (hereinafter "BACALLAO"), with unlawfully, knowingly, and intentionally conspiring with others, both known and unknown, to unlawfully, knowingly, and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 40 grams or more of a mixture and substance containing a detectable

amount of Fentanyl, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit contains only that information necessary to support probable cause for the applied for criminal complaint. It is not intended to include each and every fact and matter observed by me or known to the government regarding the investigation.

II. **PROBABLE CAUSE**

4. On January 25, 2021, USPIS and the Drug Enforcement Administration ("DEA") identified and seized a brown cardboard box with a USPS Priority Mail 2-day handwritten label attached and USPS tracking number 9505526498861021836929 (the "Bacallao Parcel") in transit at the USPS Hialeah Post Office. The Bacallao Parcel had the return address "Thomas Wilson 16017 N. 102nd PL., Scottsdale, Arizona 85255" and shipping address "Jessy Wilson 2270 W. 8th Ct., Hialeah, Florida 33010" (the "Hialeah Address") and was identified by law enforcement through USPIS database searches as suspected of containing narcotics. The label was purchased in cash at a cost of $23.15.

5. USPIS and DEA Miami conducted a postal database search on the Hialeah Address. The database search revealed two parcels, including the Bacallao Parcel, shipped from Arizona and California to the Hialeah Address within the previous week.

6. Based on open-source searches, law enforcement confirmed that the Bacallao Parcel's return address was fictitious, and that the nominal sender, "Thomas Wilson," is not associated with the return address. In my training an experience, as explained in more detail below,

2

individuals who ship narcotics using mail carriers such as the USPS often use fictitious return addresses in an effort to disassociate themselves from the package.

7. Also based on open-source searches, law enforcement identified that the recipient's name, "Jessy Wilson," was not associated with the Hialeah address. Law enforcement identified the Hialeah Address as one belonging to a mattress company, which is located in a warehouse district and does not appear to be in business.

8. USPIS requested assistance for a narcotics detection canine. A DEA Task Force Officer and his canine partner, "Sting," conducted a controlled, open-air sniff on a line of five parcels, which included the Bacallao Parcel. Sting provided a positive alert to the presence of narcotics in the Bacallao Parcel and not to any of the other parcels. Sting is trained in the detection of narcotics and has proven reliable in the past.

9. Based on my training and experience, narcotics coming from Mexico are commonly repackaged in Arizona and California and mailed throughout the country using the USPS, among other carriers. Based on my experience, shipment of the Bacallao Parcel met several other hallmarks of narcotics shipments. First, individuals often use USPS Priority Mail 2-Day when shipping narcotics to avoid any delays in the shipping process. Second, it is common for individuals shipping narcotics to pay in cash to hide the sender's identity. Third, individuals shipping narcotics will use fictitious names on labels to avoid associating themselves with the parcel. Finally, the positive alert by Sting corroborated my belief that the Target Parcel contained narcotics.

10. Based on my training and experience, the events and circumstances described above are common to narcotics traffickers who utilize various shipping providers, such as the United States Postal Service, to conduct their illegal narcotics activities.

11. Based on the foregoing, on January 26, 2021, I applied for and secured a federal search warrant with the Southern District of Florida (Case No. 21-MJ-6038-AOV-SEALED) to search the Bacallao Parcel.

12. On January 27, 2021, law enforcement executed the search warrant on the Bacallao Parcel. Law enforcement opened the Bacallao Parcel and found an additional brown cardboard box inside. Law enforcement then opened the second cardboard box and found concealed within plastic wrap two bundles of crystalized substance of suspected methamphetamine weighing approximately 960 grams and a plastic shipping envelope containing two plastic zip lock baggies. Inside the plastic zip lock baggies, law enforcement found blue pills with the markings "M/30," suspected to be Oxycodone/Fentanyl, weighing approximately 210 grams.

13. Based on my training and experience, I believe the seized pills are counterfeit Oxycodone pills containing Fentanyl. Fentanyl is a dangerous drug that can be lethal to law enforcement officers who test it in the field. Due to these health risks, law enforcement is unable to conduct field-testing of the recovered substances and will submit the narcotics to DEA Southeast Laboratory for laboratory testing.

14. Based on the foregoing, on January 27, 2021, I applied for and secured a federal tracking warrant with the Southern District of Florida (Case No. 21-MJ-6041-AOV-SEALED) to install a tracking device and beacon in a USPS package containing sham methamphetamine in aid of a controlled delivery.

15. On January 28, 2021, USPS notified the recipient of the Bacallao Parcel via the listed telephone number associated with the label that it was available for pickup at a nearby Hialeah post office. Law enforcement then executed the tracking warrant by installing a GPS

tracking device into a USPS package containing sham methamphetamine and placed it at the Hialeah post office.

16. Later that day, BACALLAO appeared at the post office and claimed the USPS package he believed to be the Bacallao Parcel. Using the tracking device, law enforcement followed BACALLAO to a red BMW 3-Series (the "Bacallao Vehicle"), which they had previously identified as a car registered to BACALLAO. Law enforcement watched him place the Bacallao Parcel inside, and then conducted mobile surveillance on his movements. BACALLAO drove the BMW to the Hialeah Address. A short time later, BACALLAO exited the Bacallao Vehicle and left the area. Minutes later he returned, at which point law enforcement conducted a stop to recover the tracking device.

17. BACALLAO consented to a search of the Bacallao Vehicle, whereupon law enforcement discovered the package of sham methamphetamine and a paper ledger listing detailed figures appearing to correspond to money received from various individuals, consistent with narcotics trafficking.

18. BACALLAO also told law enforcement that he was renting a locked room in the warehouse at the Hialeah Address and consented to a search of the room. Law enforcement provided BACALLAO with a photograph from the back entrance to the warehouse at the Hialeah address, and he identified from the photo which room belonged to him. BACALLAO showed officers the key to the room on his keychain but told them that the door was unlocked. Law enforcement subsequently entered the warehouse through the open, unlocked back door, opened the door to BACALLAO's room, and then entered the room. Inside the room was a piece of paper with the Bacallao Parcel's tracking information on it and a lunch box filled with dozens of baggies containing crystalized substance of suspected methamphetamine weighing approximately 347

grams. As described above, law enforcement is unable to conduct field-testing of the recovered substances and will submit the narcotics to DEA Southeast Laboratory for laboratory testing. Based on my training and experience, the crystalized substance found in BACALLAO's room is consistent with methamphetamine.

19. Law enforcement interviewed BACALLAO. Post-*Miranda*, BACALLAO admitted that he knew that his room in the warehouse contained crystal methamphetamine and confirmed that the substances found in the baggies in the warehouse were crystal methamphetamine. When asked about the Bacallao Parcel, BACALLAO did not deny knowledge of what was inside but was unclear about his knowledge.

### III. CONCLUSION

20. Based on the facts outlined above, I respectfully submit that there is probable cause to believe that from in or about at least January 25, 2021 to the present, within the Southern District of Florida and elsewhere, the defendant ERNESTO MORALES BACALLAO unlawfully, knowingly, and intentionally conspired with others, both known and unknown, to unlawfully, knowingly, and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 40 grams or more of a mixture and substance containing a detectable amount of Fentanyl, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

**[This Section is Left Intentionally Blank]**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

*Daniel N. Borja*

Daniel Borja, Postal Inspector
States Postal Inspection Service

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by:
Facetime
(specify reliable electronic means).

Date: 1/29/21

*Alicia O. Reyes*

HONORABLE ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE